In the ESTATE OF William Dean WITT, Incapacitated and Disabled, Plaintiff.

Ronald HERSHBERGER, Conservator of the Estate, Respondent,

v.

MISSOURI PROTECTION & ADVOCACY SERVICES, INC., Appellant.

No. WD 48169.

Missouri Court of Appeals, Western District.

Aug. 2, 1994.

Kevin A. Thompson, Jefferson City, for appellant.

Kenneth O. McCutcheon, Versailles, for respondent.

Before BERREY, P.J., and KENNEDY and ELLIS, JJ.

KENNEDY, Judge.

Missouri Protection and Advocacy Services, Inc. (MOPAS), appeals from an order of

the Probate Court of Miller County, denying MOPAS's application to intervene in a proceeding for the sale of real estate in the estate of William Dean Witt. William Dean Witt is an incapacitated and disabled person. Ronald Hershberger, public administrator of Miller County, is the guardian of his person and the conservator of his estate.

MOPAS is a non-profit corporation whose purpose is to protect and advocate the rights of developmentally disabled people, of whom William Dean Witt is one. It claims to be the officially designated entity for the system mandated by the federal Developmental Disabilities Act, 42 U.S.C. § 6000 et seq., and described at 42 U.S.C. § 6042 (1993).

The only significant asset in William Dean Witt's estate is a residence in Eldon. The record before us does not show its value. Witt and his mother occupied this house as their residence until April 23, 1991. On that date, Witt was committed to the Marshall Habilitation Center. His mother later moved out of the house. The record is short on detail, but both these actions were apparently initiated by the guardian and conservator.

The conservator sought a probate court order to sell Witt's house. The petition said the proceeds would be used to support Witt and would be invested, and that the property was "liable to perish, be consumed or rendered worse by retention." No notice of the petition was given to anyone, nor was any hearing held. The court granted the order of sale on March 4, the day after the March 3 filing of the petition.

The house had not been sold when, on May 17, 1993, MOPAS filed its application to intervene, or for appointment as next friend, to quash the order for sale of real property, and for a stay. The trial court, after a hearing, denied the motion to intervene and dismissed the other motions as moot.

MOPAS, according to its trial court motion, and according to its brief here, wants to attack the order of sale of William Dean Witt's real estate. It claims the conservator's petition for order of sale was defective in that it did not set forth the condition of the estate, nor did it set forth the facts and circumstances upon which it was founded, both as required by section 475.200.2, RSMo. 1986. It claims further that the order of sale was improper in that it was granted without any hearing, and without any finding that there was no necessity for testimony in support of the order of sale, in violation of section 475.200.2, RSMo.1986. It claims further that the probate court erred in failing to provide for an opportunity to file objections to the petition, in accordance with section 472.090, RSMo.1986 (made applicable to guardianship matter by section 475.020, RSMo.1986). MOPAS wishes to resist the petition for sale of real estate on the merits because, it says, if the house is sold, the proceeds will disqualify William Dean Witt from eligibility for Medicaid payment for his expenses at the Marshall Habilitation Center, and the proceeds will have to be used for the payment of his Marshall Habilitation Center expenses.

We intimate no opinion, of course, on the merits of the arguments which MOPAS intends to make. The only question on this appeal is its right to intervene.

We are met at the door with the conservator's contention that MOPAS's appeal ought to be dismissed, because MOPAS is not an "interested person." Only an "interested person" aggrieved thereby may appeal from an order of the probate court. Section 472.-160.1, RSMo.1986.

Conservator in another point directed to the right of intervention, argues against MOPAS's "standing" to assert protectee's interest; this argument against MOPAS's "standing" presents the same basic issue as the argument against MOPAS's "interested person" status for appeal, for intervention of right is available only when "the applicant claims an interest relating to the property or transaction which is the subject of the action." Rule 52.12(a). William Dean Witt's ownership of his residence, however, gives him an interest in the proceeding to sell the property. Section 472.010(14), RSMo.1986.

We hold, for reasons we explain in succeeding paragraphs, that protectee's interest is the interest of MOPAS. MOPAS can assert the rights of William Dean Witt in its own name. MOPAS is therefore an "inter-

ested person," entitled to appeal the probate court order denying it intervention in the proceeding to sell William Dean Witt's residence. It also has "standing" to support intervention and to advocate the interests of William Dean Witt.

The statutory charter for such protection and advocacy services as MOPAS is found in 42 U.S.C. §§ 6041 and 6042 (1993). These sections are a part of the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6000 et seq., the purpose of which, broadly stated, is to improve the lot of developmentally disabled people, see, 42 U.S.C. § 6000(b) (1993). There seems to be no question that William Dean Witt is one of those persons the Act is intended to benefit. The Act, as a part of an elaborate program, provides for allotments to support "a system in each state to protect the legal and human rights of persons with developmental disabilities...." Such a system is to "have the authority to (i) pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such persons...." Section 6042(a)(2)(A)(i) (1993). MOPAS, a not-for-profit corporation, represents itself as "the entity in Missouri designated and authorized under 42 U.S.C. 6042(a)(1) to protect and advocate the rights of persons with developmental disabilities." MOPAS's credentials as Missouri's officially designated representative of the protection and advocacy system described in sections 6041 and 6042 have not been called into question in this proceeding.

■ Both parties have assumed the Supreme Court intervention rule, Rule 52.12, is applicable to this case, and have used the provisions of that rule to argue for and against MOPAS's intervention. The fact is that Rule 41.01, Rules, When Applicable, provides for making the civil procedure rules applicable in probate matters if ordered by the probate court. An application to intervene in a probate court proceeding may, and should, be treated as an application for an order to make Rule 52.12 applicable to such proceeding. If intervention is indicated under Rule 52.12, if it were applicable, then Rule 52.12 should be made applicable by

court order. Our procedure, in the interest of justice and equity, must accommodate the end of giving to MOPAS the opportunity to present William Dean Witt's claims; otherwise MOPAS cannot effectively carry out its commission. No one has suggested any other method than intervention by which MOPAS can represent William Dean Witt's "human and legal interests" in the real estate sale proceeding. "The (Developmental Disabilities) Act not only described the range of services to be provided by the protection and advocacy systems, it also states that the systems 'must have the authority' to perform these services ... The state cannot satisfy the requirements of the DDA by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority." *Mississippi Protection and Advocacy System v. Cotten,* 929 F.2d 1054, 1059 (5th Cir.1991) (quoting from and adopting district court findings).

We follow the parties' lead, therefore, in holding that the terms of Rule 52.12 are applicable to this proceeding.

■ The Conservator says that MOPAS's application to intervene is not timely. An application to intervene under Rule 52.12 must be timely made. The conservator points out that the order of sale was made on March 4, 1993, while the application to intervene was not filed until May 17, 1993. There is no specific limit on the time nor the stage of the proceeding when an application to intervene must be made; the timeliness of a motion to intervene depends upon the posture of the case, and the balancing of all factors bearing upon the question. "The court of appeals identified two factors for determination of the issue of timeliness of an application to intervene subsequent to trial. The first is whether substantial justice requires intervention, and the second is whether existing parties to the case will be prejudiced if intervention is permitted." *Frost v. Liberty Mutual Ins. Co.,* 813 S.W.2d 302, 304 (Mo. banc 1991). With respect to the sale of the Witt real estate, even though the order of sale might not be appealable, there remains much to be done, or that could be done with respect to the sale of the real estate. The

order might be set aside by the court. Section 472.150, RSMo.1986. The real estate has not been sold. Any report of sale will have to be approved by court. Section 475.-240, RSMo.1986. In all these proceedings, William Dean Witt, and therefore MOPAS, has an interest.

We hold that the application to intervene was timely.

■ The conservator argues, next, that the interests of William Dean Witt are already adequately represented by existing parties, and MOPAS is therefore not entitled to intervention in his behalf. By this, the conservator means that he, acting under the orders and supervision of the Probate Court, represents the interests of William Dean Witt well enough. The conservator's argument is indeed in harmony with the Missouri guardianship code. The code, and the conservator's argument, assume that the conservator, acting under the orders and supervision of the Probate Court, will always know what the best interests of the protectee are, and will always act in accordance with those interests. It is paternalistic toward the protectee. It accords to him, for example, no notice or hearing on the sale of his real estate, Section 475.230, RSMo.1986. He can be moved from one residence to another without notice or hearing, and without consulting his wishes. Section 475.120, RSMo. 1986.

The Developmental Disabilities Act, however, respects the protectee's personality and his individual preferences. It credits developmentally disabled people with intelligence and sensibilities. It runs counter to their treatment as a generic group, see 42 U.S.C. § 6000(a), (b) (1993). It recognizes that "these (persons with developmental disabilities) have capabilities, competencies, and personal needs and preferences." 42 U.S.C. § 6000(a)(2) (1993). The Act recognizes that the developmentally disabled person, in some cases, needs specialized advocacy and protection of his "legal and human rights." 42 U.S.C. § 6041 (1993). In *Developmental Disabilities Advocacy v. Melton*, 689 F.2d 281 (1st Cir.1982), the court in ruling that a protection and advocacy service like MOPAS had standing to bring a section 1983 action

on behalf of several mentally retarded residents at a state institution said: "Subsequent decisions of the Court have relied upon Button in recognizing the generalized substantive right of nonprofit legal advocacy groups such as the NAACP and the ACLU to engage in 'collective activity undertaken to obtain meaningful access to the courts for the poor, minorities, and other special constituencies.' " *Id.* at 288. MOPAS and other protection and advocacy groups for the developmentally disabled have been permitted to represent members of their constituencies both as initiators of legal action proceedings, and as intervenors therein, in their own names. *See, Protection & Advocacy, Inc. v. Murphy,* 1992 WL 59100 (N.D.Ill.1992); *Mississippi Protection and Advocacy System v. Cotten,* 929 F.2d 1054 (5th Cir.1991); *Developmental Disabilities Advocacy Ctr. v. Melton,* 689 F.2d 281 (1st Cir.1982); *Goldstein v. Coughlin,* 83 F.R.D. 613 (W.D.N.Y. 1979); *Naughton v. Bevilacqua,* 458 F.Supp. 610 (D.R.I.1978).

Many, probably most, guardians and conservators, and probate judges, earnestly try to accommodate the personal choices of their wards where it is possible, as a practical matter, to do so. But there are those situations where the coldly practical comes into conflict with personal choice. Economy and efficiency point in one direction; the dearly held preferences of the ward point in another. The case before us may be such a case— or, on the other hand, it may only present legal and factual issues with respect to the sale of the house, upon which MOPAS, in behalf of William Dean Witt, wishes to take an adverse position to the conservator-guardian. The probate judge must resolve the issue of where the real best interests of the ward lie. He is best equipped to make a wise decision if opposing points of view are represented. This serves the purpose and intent of 42 U.S.C. § 6042, and leads to the conclusion that MOPAS should be allowed to intervene in the real estate sale proceeding.

We hold, therefore, that MOPAS should be allowed to intervene in its own name in the proceeding for the sale of William Dean Witt's real estate. The order denying the motion to intervene is reversed, and the

cause is remanded with directions to sustain MOPAS's application to intervene, and to reinstate the other motions which were dismissed as moot.

All concur.