**In the Interest of M.B., a minor,**

**L.B., Movant/Appellant,**

v.

**Kathryn S. Herman, Acting Chief Juvenile Officer, Respondent/Respondent.**

**No. ED 80562.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 12, 2002.

Joanne S. Wilson, Chesterfield, MO, for appellant.

Margaret Gangle, St. Louis, MO, for respondent.

Bryan L. Hettenbach, Clayton, MO, Guardian Ad Litem.

KATHIANNE KNAUP CRANE, Judge.

Paternal grandmother appeals from the denial of her motion to intervene in the termination of paternal rights proceeding with respect to her grandson, M.B., and the denial of her petition for custody of M.B. We affirm.

M.B., [the child] was born on January 20, 1999 to a 15 year-old mother. On April 25, 2000 he was taken by the Division of Family Services [DFS] into emergency protective custody and placed in a foster home because mother had left him at an ex-boyfriend's house four days earlier and never returned. On April 26, 2000 the Acting Chief Juvenile Officer for the Twenty–Second Judicial Circuit filed a petition alleging that the child came within the provisions of Section 211.031 RSMo (2000) because he was without proper care, custody, or support. That same day the court issued an order of protective custody, finding the child was within the jurisdiction of the court pursuant to Section 211.031.

On July 6, 2000 the court found, after a hearing, that the child was within the provisions of Section 211.031.1 and awarded the care, custody and control of the child to the Missouri Division of Family Services for appropriate placement. Review hearings were conducted on September 28, 2000, December 21, 2000, March 29, 2001, July 5, 2001 and October 18, 2001. After each of these hearings, the trial court found that DFS had engaged in reasonable efforts to deliver the child to the parents, but that parents remained inappropriate custodians. In addition, after the July 5 hearing, the court ordered DFS to file a termination of parental rights petition. On August 17, 2001 the child's foster mother filed a petition to terminate the parental rights of the child's natural parents and to adopt the child. On October 15, 2001 the family support team recommended that the child remain in his pre-adoptive foster home for adoption. After the October 18 hearing, the court found that the permanent plan which serves the best interests of the child is termination of parental rights and adoption.

On October 29, 2001, L.B., the child's paternal grandmother [grandmother], filed a motion pursuant to Section 211.177 to intervene and a petition for custody of the child. After an evidentiary hearing on the motion and petition, the trial court issued its findings, conclusion and judgment. The trial court found that DFS and the deputy juvenile officer investigated grandmother's suitability for placement of the child and did not recommend that the child be placed with grandmother; that father is a risk to the child and that grandmother will allow father to have access to the child; that permanency is the key factor for the child, and disruption of the child's current placement, where he has received love and affection and been cared for adequately, will negatively impact him; that grandmother did not know the correct birth date for the child, had had no contact with the child since his removal from mother's care, and had not asked for visits with the minor child; that child's needs were being met by his foster parents, with whom he has lived since April, 2000, and to whom he is bonded; and that grandmother will not protect the minor child from father, who continues to use illegal substances, has an outstanding warrant for assault, and has no permanent address. The court concluded that "the best interests and welfare of the minor child require that [grandmother's] Motion to Intervene and Petition for Custody be denied."

On appeal from this judgment, grandmother first asserts that the trial court erred in denying the motion to intervene because the trial court made findings that custody was not in the child's best interest but did not make any findings that grandmother's intervention was against the child's best interest. We disagree.

 Rule 52.12 governs motions to intervene. Rule 52.12(a) addresses intervention as a matter of right, Rule 52.12(b) governs permissive intervention, and Rule 52.12(c) sets out the procedure for making the motion. Grandmother's motion to intervene does not specify whether her motion was filed pursuant to Rule 52.12(a) or Rule 52.12(b). In order to assert a right to intervene under Rule 52.12(a), grandmother was required to plead that she had an unconditional right to intervene under a state statute or that she had an interest in the subject of the transaction that was not adequately protected. *In re M.M.P.*, 10 S.W.3d 195, 198 (Mo.App.2000); *In re S.R.L.*, 984 S.W.2d 558, 559 (Mo.App.1999). Grandmother does not plead that Section 211.177 gives her an unconditional right to intervene under Rule 52.12(a)(1). Further, she does not and cannot plead an unconditional right to intervene under Rule

52.12(a)(2) because, as a matter of law, her biological relationship to M.B., by itself, does not constitute the necessary interest under Rule 52.12(a)(2) to require intervention. *In re H.M.C.*, 11 S.W.3d 81, 90 (Mo.App.2000).

Although grandmother's pleading lacks the required allegations, because of the nature of this case we will consider her motion as though she had pleaded an unconditional right to intervene under Section 211.177. For the purposes of this opinion, we will assume, without deciding, that Section 211.177 creates an unconditional right to intervene.

▮▮▮▮ An order denying a motion to intervene under Rule 52.12(a) is an appealable judgment. *M.M.P.*, 10 S.W.3d at 197; *S.R.L.*, 984 S.W.2d at 559; *Long v. Seely*, 975 S.W.2d 208, 211 (Mo.App.1998). We review the denial of a motion to intervene as of right under the standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); that is, we will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Long*, 975 S.W.2d at 210; *In re L.J.H.*, 67 S.W.3d 751, 755 (Mo.App.2002). In so doing we consider the facts in the light most favorable to the court's judgment. *Id.*

▮▮▮▮ Section 211.177 sets out a grandparent's right to intervene:

A grandparent shall have a right to intervene in any proceeding initiated pursuant to the provisions of this chapter, in which the custody of a grandchild is in issue, unless the juvenile judge decides after considering a motion to intervene by the grandparent that such intervention is against the best interest of the child.

We have explained this statute as follows: The test under section 211.177.1 is not whether it would be in the best interest of the child for a grandparent to intervene, but rather such intervention would be "against the best interest of the child." The statute therefore creates a rebuttable presumption that a grandparent has a right to intervene, absent evidence it would be against the child's best interest. Thus, once a grandparent establishes that he or she is entitled to intervene under section 211.177.1, the burden of going forward with the evidence shifts to the party seeking to prevent the intervention. The party opposing the intervention must present evidence to establish it would be against the best interest of the child to permit the grandparent to intervene.

*Long*, 975 S.W.2d at 211. *See also, L.J.H.*, 67 S.W.3d at 755–56. The intervenor, as pleader, has the burden to show all the elements required for intervention as a matter of right under Rule 52.12. *Flippin v. Coleman Trucking, Inc.*, 18 S.W.3d 17, 20 (Mo.App.2000). Once the grandparent shows entitlement to intervene under Section 211.171.1, the burden then shifts to the party seeking to prevent intervention. *Long*, 975 S.W.2d at 211.

▮▮▮▮ Because grandmother testified that she was the child's grandmother, which entitled her to intervene under Section 211.177, the burden shifted to the juvenile officer to show that such intervention was against the child's best interests. *Long*, 975 S.W.2d at 211. Substantial evidence was adduced to support a finding that the intervention was against the child's best interests.

Lori Phillips, the child's case manager, testified that grandmother had been considered and rejected as a possible placement because she might give father, who had problems with drugs, housing, employment, and the court order, access to the

child. Ms. Phillips still recommended that grandmother not have custody because father would have contact with the child in grandmother's home; father either continued to live with grandmother or freely accessed her home. Father presented a risk to the child because of his admitted and observed drug use and because he had never complied with the court order setting out the conditions he was required to meet to obtain custody of the child. She further testified that the child was in a good placement. He has bonded with his foster mother whom he hugs and kisses and calls "mom," and has been with her for a year and a half.

Gwendolyn Vaughn, the deputy juvenile officer, also opposed grandmother's custody. She had run a record check on father which disclosed outstanding warrants, including one for assault on a person, which led her to be concerned that father's access to the child would place the child at risk. She testified that, if father had access to the home, the child should not be placed there. Father told her he was living with grandmother and DFS had information that father still resided with grandmother. Further, she described an incident between grandmother and father that indicated to her that grandmother would not exercise control over father in the household.

At the conclusion of the hearing, the G.A.L. advised the court that grandmother had the right to intervene unless the court found that it was against the best interest of the child, with which statement the court agreed. The G.A.L. recommended that both motions be denied because grandmother had previously been considered and rejected for custodial placement and, in the interval, the child had been placed and was doing well in the placement and there was no indication that the natural parents were going to challenge the termination of their rights.

The evidence that the child had been in a positive placement for one and a half years and had bonded with his foster parent, coupled with evidence that father, who presented a risk to the child, would have access to the child if grandmother was given custody, was sufficient to rebut the presumption that grandmother had a right to intervene and to support a finding that grandmother's intervention was against the best interests of the child. *See H.M.C.,* 11 S.W.3d at 90–91. The court specifically found that grandmother would not protect the child from father. *See L.J.H.,* 67 S.W.3d at 758. In this case the trial court's finding that the "best interests and welfare" of the child "require" denial of the motion to intervene was semantically equivalent to a finding that an intervention would be "against" the child's best interest. Point one is denied.

For her second and fourth points grandmother contests the denial of her petition for custody. Because we have affirmed the denial of her motion for intervention, she no longer has standing to challenge the denial of her petition for custody. *Lewis v. Barnes Hosp.,* 685 S.W.2d 591, 594 (Mo.App.1985). Points two and four are denied.

■ For her third point grandmother asserts that the trial court erred in ruling that evidence of two incidents of possible injury to the child while he was in DFS custody were irrelevant. The trial court explained that the issue was whether grandmother was an appropriate placement, not whether DFS had handled the case well.

■ In a court-tried case, "prejudicial or reversible error in the admission or rejection of evidence is not an issue on appeal." *City of Town & Country v. St.*

*Louis County,* 657 S.W.2d 598, 608 (Mo. banc 1983). "The issue is whether the evidence should have been admitted and considered, or rejected and not considered, and when that issue is determined the next issue is what the judgment of the court should be, based on a consideration of the competent and admissible evidence." *Thau–Nolde, Inc. v. Krause Dental Supply & Gold Co., Inc.,* 518 S.W.2d 5, 9 (Mo.1974).

The evidence was properly rejected and not considered. Grandmother cannot rebut evidence showing that it is against the child's best interest for *her* to intervene by showing that the child was subject to harm in a different placement. Point three is denied.

The judgment of the trial court is affirmed.

PAUL J. SIMON, P.J. and GARY M. GAERTNER, SR., J. concur.